UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL CARUTHERS,

                            Petitioner,

v.

SUPERINTENDENT UHLER,

                            Respondent.

_____

                         **REPORT AND**
                         **RECOMMENDATION**

                         1:23-cv-1124-JLS-JJM

Before the court is petitioner Michael Caruthers' *pro se* petition [1][1] for habeas corpus relief pursuant to 28 U.S.C. §2254, which has been referred to me for initial consideration by District Judge John L. Sinatra, Jr. [16].  For the following reasons, I recommend that the petition be denied.

## BACKGROUND

Following a jury trial, Caruthers was convicted of, *inter alia*, two counts of rape in the first degree in violation of New York Penal Law §130.35(1). People v. Caruthers, 199 A.D.3d 1390, 1390 (4th Dept. 2021), leave denied, 37 N.Y.3d 1159 (2022). According to the trial testimony, on the morning of August 23, 2014, Caruthers grabbed a 14-year-old girl as she was walking down a city street in downtown Rochester, New York, put her in a chokehold, forcibly raped her, took her to a second location, and raped her again. [14-4] at 1171-86. A jury found him guilty on all counts, and he was sentenced as a persistent felony offender to an

---

[1]    Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

aggregate prison sentence of 75 years to life. [14-2] at 87-90. Caruthers' conviction was affirmed

on appeal by the State of New York Supreme Court, Appellate Division. Caruthers, 199 A.D.3d

at 1390.

## A.  Motion to Suppress Identification

Prior to trial, Caruthers moved to suppress the victim's testimony regarding her

identification of him, both during a pre-arrest "show-up" and subsequently in court. [14-2] at

109-11. Caruthers argued that the show-up identification procedure was unduly suggestive. Id.

On December 19, 2014, Monroe County Court Judge James J. Piampiano held a hearing. Id. at

155.

At the hearing, a Rochester Police investigator testified that he asked the victim if

she would be willing to look at someone who "may or may not be involved in the crime" to see if

she "recognized him from anywhere". [14-4] at 84. The victim, seated in a police car, viewed

Caruthers from about 60 feet away. Id. at 85, 88. It was approximately 50 minutes after the

incident. Id. at 83. He testified that the victim immediately had an emotional reaction to seeing

Caruthers and identified him as the perpetrator. Id. at 90.

The court found that the show-up procedure was "not so unnecessarily suggestive,

as to create a substantial likelihood of misidentification". [14-2] at 166 (*citing* People v. Stanley,

108 A.D.3d 1129 (4th Dept. 2013)). Accordingly, it denied Caruthers' motion to suppress. Id. at

168.

## B.  Motion to Preclude Victim's Sexual History

The prosecution moved *in limine* to preclude evidence of the victim's sexual

history, pursuant to New York Criminal Procedure Law ("CPL") §60.42, also known as the

"rape shield law". Id. at 195. Specifically, the prosecution opposed the admission of evidence that the victim was sexually active, and further that, the morning of the rape, she had engaged in consensual sexual intercourse with her similarly aged boyfriend at her mother's house. Id.

During pretrial conferences, defense counsel indicated that he was aware of the rape shield statute, and that he did not believe that any exception applied to prevent preclusion of evidence of the victim's sexual contact with her boyfriend. [14-4] at 144-46, 157. Judge Piampiano agreed. Id. at 158. After a discussion about what elements of the victim's early morning conduct would be permissible to explore, the court ruled that cross-examination of the victim would be limited to questioning regarding an early morning argument between the victim and her mother, but with no mention of her boyfriend's presence at the home. Id. at 157-62. Defense counsel took an exception to that ruling. Id. at 162.

## C.    Trial

On April 16, 2015, a jury trial was commenced before Judge Piampiano. Id. at 1060. The prosecution offered testimony from the victim, a firefighter to whom she reported the rape, several responding officers, and a forensic biologist. Id. at 1071-1483.

At the close of the prosecution's proof, defense counsel moved to dismiss counts one, two, three, and four of the indictment (the rape charges), on the grounds that the sequence of events testified to by the victim reflected three separate incidents rather than the two charged in the indictment, rendering the counts duplicitous. Id. at 1493-97. The court found that the proof adequately established two separate incidents, and denied the application. Id. at 1497.

The defense offered no witnesses. Id. at 1502. On April 21, 2015, the jury returned a verdict of guilty on all counts. Id. at 1627-29.

**D.      Sentencing**

On May 6, 2015, the prosecution filed notice of intent to have Caruthers adjudicated to be a persistent felony offender pursuant to New York Penal Law §70.10, which would impose an extended period of incarceration as well as lifetime supervision, based on the defendant's previous felony convictions, his character and criminal history, and the nature and circumstances of the criminal conduct. [14-2] at 210-13.

At a court appearance on May 21, 2015, defendant's trial counsel asked for new counsel to be appointed to explore a potential issue of ineffective assistance of counsel in connection with his handling of the plea negotiations. [14-4] at 1637-38 (*citing* Lafler v. Cooper, 566 U.S. 156 (2012)). The prosecution did not oppose the request, but stated that "there were no [plea] offers extended in this case whatsoever . . .  so therefore no offers could be discussed with defendant". Id. at 1638-39. The court also expressed its "clear recollection that no offers were extended by the prosecution to the defendant to consider in lieu of trial". Id. at 1639.

Defense counsel submitted a memorandum which alleged that, during a pretrial meeting with the assistant district attorney, she told him that Caruthers faced a possible sentence of "up to 50 years" if convicted based on his prior violent felony conviction. [14-2] at 201. She allegedly further indicated that, if Caruthers was interested, she would "discuss the possibility of a plea offer 'in the low 20s'". Id. Defense counsel stated that he believed at the time that Caruthers had only one prior felony offense. Id. Accordingly, he advised Caruthers that he would face a sentence of "at most" 50 years imprisonment. Id. at 202.

The court denied the request for a hearing or appointment of new counsel. [14-4] at 1649. Judge Piampiano found that: Caruthers did not allege a specific offer was made; he did not allege that he likely would have accepted the offer; the court itself would not have accepted

such an offer, even if accepted; and thus it was not "reasonably probable" that a conviction under the purported offer's terms would have been less severe than that of the judgment. Id.

**E.      Direct Appeal**

In April 2021, Caruthers appealed his conviction and sentence to the State of New York Supreme Court, Appellate Division, Fourth Department. [14-2] at 40. In relevant part, Caruthers argued that: the show-up identification was unduly suggestive and unjustified (id. at 23); trial testimony about the rape rendered the indictment duplicitous (id. at 30-32); his trial counsel was ineffective in plea bargaining for failing to correctly advise him about the possibility of enhanced sentencing (id. at 35-37).

The Appellate Division unanimously affirmed the judgment of conviction. Caruthers, 199 A.D.3d at 1390. The court rejected Caruthers' arguments regarding suppression of the victim's identification testimony, ineffective assistance of counsel, the alleged duplicity of counts three and four, as well as his remaining arguments. Id. at 1390-91.

By letter application to the New York State Court of Appeals, Caruthers itemized "two issues worthy of a grant of leave to appeal": (1) whether the lack of a formal plea offer was dispositive on the question of whether his attorney was ineffective in plea negotiations, and (2) whether the Appellate Division erred by declining to address the trial court's apparent failure to rule on his motion for dismissal on the seventh count of the indictment (criminal obstruction of breathing). [14-2] at 383. The Court of Appeals denied his application for leave to appeal. Caruthers, 37 N.Y.3d. at 1159.

**F.**     **Post-Judgment Motion to Vacate**

On December 27, 2021, Caruthers filed a motion to vacate his conviction pursuant to CPL §440.10. [14-2] at 401. In it, he again argued that trial counsel was ineffective, alleging that: (1) during plea negotiations, trial counsel failed to investigate his criminal history and to advise him that he faced life in prison; and (2) trial counsel failed to challenge the prosecution's motion *in limine* to preclude evidence of the victim's sexual history. Id. at 402-09.

In a Decision and Order dated July 7, 2022, Monroe County Court Judge Douglas A. Randall denied the motion without a hearing. Id. at 446. Judge Randall determined that the first ground was raised and rejected by the Appellate Division on direct appeal, having found that the prosecution never extended any plea offers to defendant. Id. at 447-48. Judge Randall determined that the second ground, regarding trial counsel's alleged failure to seek an exception to the rape shield law, was a matter of record and should have been raised on direct appeal. Id. at 448.[2] He held, in the alternative, that Caruthers failed to present facts or evidence that defense counsel would have been successful in seeking such exception. Id.

Caruthers sought leave from the Appellate Division to appeal his 440.10 motion, but leave was denied. Id. at 452-88.

## DISCUSSION

Caruthers raises four grounds in his Petition: (1) ineffective assistance of trial and appellate counsel with regard to plea negotiations, ascertaining his persistent felony offender status, and pursuing a rape shield law exception; (2) duplicity of rape counts in light of the

---

[2]     Respondent points out that this requirement was changed by statute in 2021, and that effective assistance of counsel claims may now be brought on a CPL 440.10 motion. *See* Respondent's MOL [13] at 20-21 n. 10; CPL §440.10(2)(c); People v. Green, 201 A.D.3d 814, 816 (2d Dep't 2022) (Record-based ineffective assistance of counsel claims no longer subject to mandatory dismissal under CPL §440.10(2)(c)).

victim's trial testimony; (3) violation of his confrontation clause rights due to application of the rape shield law; and (4) failure to suppress the victim's identification of petitioner for lack of an independent basis. [1] at 5-10.

### A. Unexhausted Claims

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies." Baldwin v. Reese, 541 U.S. 27, 29 (2004); *see* 28 U.S.C. §2254(b)(1). To satisfy the exhaustion requirement, a petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process". O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." Baldwin, 541 U.S. at 29. The exhaustion requirement may be excused if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the [petitioner]". 28 U.S.C. §2254(b)(1)(B).

Respondent argues that Caruthers' duplicitous indictment, Confrontation Clause, and suggestive identification claims, as well as his claim of ineffective assistance of counsel as to appellate counsel, are unexhausted. [13] at 22-24; 32-33; 34-35; 44. Regarding the trial-level issues, respondent argues that those claims are unexhausted because they were not raised in Caruthers' motion for leave to appeal to the New York State Court of Appeals. Id. at 22-24; 32-33; 34-35. Indeed, a Confrontation Clause issue was not even raised before the trial court. *See* id. at 34; Petition [1] at 5 (alleging that trial counsel failed to challenge the issue). With respect to the claim of ineffective assistance of appellate counsel, respondent argues that claim is unexhausted because Caruthers has not raised it in a writ of error *coram nobis*. [13] at 44.

In his letter application to the Court of Appeals, Caruthers itemized "two issues worthy of a grant of leave to appeal": (1) whether the lack of a formal plea offer was dispositive on the question of whether his attorney was ineffective in plea negotiations, and (2) whether the Appellate Division erred by declining to address the trial court's apparent failure to rule on his motion to dismiss the criminal obstruction of breathing charge. [14-2] at 383.[3] Caruthers fleshed out those two arguments in the body of the letter, then stated that he "relie[d] on his brief and the record of the proceedings for the remainder of his application for leave". Id. at 387.

In Grey v. Hoke, 933 F.2d 117 (2d Cir. 1991), a habeas petitioner applied for leave to appeal to the New York Court of Appeals by letter addressing only one issue. Id. at 120. While petitioner also attached his Appellate Division brief containing two other claims to the letter, his letter made no mention of those claims. Id. The Second Circuit held that such a presentation "did not fairly apprise the court" of the two unaddressed issues, and concluded that such claims were unexhausted and procedurally barred. Id.

The Second Circuit has repeatedly confirmed this holding. *See* Jordan v. Lefevre, 206 F.3d 196 (2d Cir. 2000) ("arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction"); Brown v. Senkowski, 152 F. App'x 15, 18 (2d Cir. 2005) (Summary Order) ("[t]he mere inclusion, for example, in petitioner's leave application of the briefs he submitted to the Appellate Division did not alert the Court of Appeals as to the federal nature of his claim"); *but see* Morgan v. Bennett, 204 F.3d 360, 370-71 (2d Cir. 2000) (holding that an application letter expressly requesting that the Court of Appeals "consider and review all issues outlined in defendant-appellant's brief" was

---

[3]     There is no dispute that these two claims were exhausted.

sufficient to consider those claims "fairly presented"). The Second Circuit has explained that in those cases, "petitioner's leave application had affirmatively directed the Court of Appeal's attention away from claims contained in the attached briefs". Galdamez v. Keane, 394 F.3d 68, 76 (2d Cir. 2005).

The facts of this case align with those in Grey, Jordan, and Brown. Caruthers' application letter to the Court of Appeals, which makes no reference to any issue of suggestive identification, duplicitous indictment, or the Confrontation Clause, cannot be found to have fairly presented those claims to the court. Those claims are thus unexhausted.

In addition, Caruthers may no longer submit these claims to the state courts, as he "was entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals, both of which he pursued long ago". Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). When this occurs, "federal habeas courts also must deem the [unexhausted] claim[] procedurally defaulted". Id. at 90; *see* Wearing v. LaValley, 2015 WL 6738327, *15 (S.D.N.Y. 2015). Therefore, I recommend denial of those claims as unexhausted and procedurally barred.[4]

With respect to Caruthers' claim regarding *appellate* counsel, that claim is unexhausted because he has not sought a writ of error *coram nobis* at the Appellate Division. *See* People v. Bachert, 69 N.Y.2d 593, 600 (1987) ("[c]oram nobis relief is the best available, albeit imperfect . . . to address collateral claims of ineffective assistance of appellate counsel"); Daley v. Lee, 2012 WL 2577472, *7 (E.D.N.Y. 2012) ("[t]he exclusive state court remedy to raise an

---

[4]     I note that petitioner makes no claim of actual innocence, which may, under certain circumstances, allow a petitioner to present a procedurally barred claim. *See* Hyman v. Brown, 927 F.3d 639, 670 (2d Cir. 2019) (finding the petitioner "has not made the actual innocence showing necessary to pass through the narrow gateway for federal habeas review of his procedurally barred . . . claim").

ineffective assistance of appellate counsel claim is the *coram nobis* petition. . . . . Indeed, the *coram nobis* petition is the only way to exhaust this type of claim for habeas purposes").

However, the claim as to appellate counsel is not procedurally defaulted because a writ of *coram nobis* "can be brought at any time". Ikker v. Taylor, 2008 WL 5110866, *6 (E.D.N.Y. 2008). The court is thus left with some avenues to consider, (*see* Rhines v. Weber, 544 U.S. 269, 273-75, 277 (2005)), including the discretion to deny the claim on the merits. *See* 28 U.S.C. §2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). Perez v. Miller, 2024 WL 3328588, *8 (E.D.N.Y. 2024) ("a habeas court may dismiss any claims if they are plainly meritless, even if they are unexhausted"). Respondent argues that this is the correct approach in this case (*see* [13] at 44), and I agree.

**B.      Ineffective Assistance of Counsel**

Thus, I give substantive consideration only to Caruthers' claims that: (1) trial counsel was ineffective as to plea negotiations and ascertaining his sentencing exposure, and that (2) trial and appellate counsel were ineffective relative to trial counsel's failure to seek an exception to the rape shield law to rebut the victim's testimony. *See* [1] at 16.

**1.      Standard for Habeas Relief**

28 U.S.C. §2254(d) provides that a habeas corpus petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding".

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011); *see also* Parker v. Matthews, 567 U.S. 37 (2012) (courts may not "us[e] federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts"). Factual findings by a state court enjoy a "presumption of correctness" that a petitioner must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In all, a petitioner seeking habeas corpus relief has "a steep hill to climb". Reinard v. Bell, 2021 WL 1746430, *6 (W.D.N.Y. 2021).

Where a state court rejects a petitioner's constitutional claim on the merits, "the federal court must 'focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.'" Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (citations omitted); *see* Parker v. Graham, 517 F. Supp. 3d 138, 147 (W.D.N.Y. 2021). "[A]n *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." Williams v. Taylor, 529 U.S. 362, 413 (2000) (emphasis in original). That is, petitioner must demonstrate some additional "increment of incorrectness beyond error". Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).

### 2.      Effectiveness of Trial Counsel as to Plea Negotiations

Regarding trial counsel, the state court's ultimate decision was rendered by the Appellate Division, who "reject[ed] defendant's contention that defense counsel was ineffective in connection with plea bargaining inasmuch as 'the People refused to extend any offers due to defendant's criminal history'". Caruthers, 199 A.D.3d at 1391 (*quoting* People v. Spencer, 183 A.D.3d 1258, 1259 (4th Dept. 2020)).

To establish ineffective assistance of counsel, a petitioner must demonstrate both that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process". Lafler v. Cooper, 566 U.S. 156, 162 (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012) (emphasis added). Of course, "counsel has a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain". Davis v. Greiner, 428 F.3d 81, 88 (2d Cir. 2005).

Here, it is uncontested that there was "no formal plea offer" extended to Caruthers. [1] at 16. Some courts have concluded that the absence of a formal offer, by itself, negates a claim for ineffective assistance in plea negotiation. See Burgan v. Lilley, 2024 WL 965149, *4 (S.D.N.Y. 2024) ("[t]o bring an ineffective assistance of counsel claim concerning the plea-bargaining stage, a formal plea offer must have been extended to the defendant"); Mavashev v. United States, 2015 WL 1508313, *9 (E.D.N.Y. 2015) ("[a]ny attempt to extend Lafler to an informal plea offer must be rejected, as the distinction between formal plea offers and informal plea offers is significant"). After all, if there is no underlying duty to communicate an "informal" plea offer to defendant in the first place, what duty does defense counsel breach by

inadequately advising his client regarding the merits of such "offer". *See* Mavashev, 2015 WL 1508313 at *10 ("[w]here, as here, Petitioner has alleged only that broad sentencing guideposts were discussed, he clearly cannot establish the deficient performance prong under Strickland") (citing cases).

There are practical reasons for treating preliminary plea discussions differently than a "formal" plea offer. An invitation to "discuss the possibility of a plea offer 'in the low 20s'" ([14-2] at 201) is insufficiently definite in its terms, such as "the [specific] charges to which Petitioner would acknowledge guilt, the factual basis for a plea, or restitution or forfeiture issues". Mavashev, 2015 WL 1508313 at *10. As the Supreme Court has observed, "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations". Frye, 566 U.S. at 146. Without knowing the full terms of the prosecutor's proposal, it is impossible to determine whether such discussions could realistically have led to an acceptable plea agreement.

Indeed, to prove Strickland prejudice in connection with plea proceedings, a petitioner must demonstrate "that the outcome of the plea process would have been different with competent advice". Lafler, 566 U.S. at 163. In so doing, the petitioner must show that: (1) "there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), (2) that the court would have accepted its terms, and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed". Id. at 164 (numeration added).

Here, the first two elements are not satisfied. First, as there was no formal offer, merely an invitation to discuss the possibility of a certain sentencing range, Caruthers cannot establish that it was reasonably likely a plea offer would have been presented to the court. Second, the trial court stated, in no uncertain terms, that it would not have accepted a plea agreement with such a sentencing range. *See* [14-4] ("the record should be clear that I would not have accepted the purported offer"). "[I]f [petitioner] fails to show a reasonable probability the trial court would have accepted the plea, there is no Strickland prejudice". Frye, 566 U.S. at 151.

For these reasons, I conclude that the Appellate Division's decision rejecting Caruthers' claim that counsel was ineffective as to plea negotiations is not unreasonable, and thus there is no basis for habeas relief.

### 3.    Ineffectiveness of Counsel as to the Rape Shield Exception

Caruthers argues that his trial counsel was ineffective with respect to pursuing an exception to the rape shield law, which prevented cross-examination of the victim as to her sexual contact with her boyfriend the morning of the attack. [1] at 5.

As for his appellate counsel, Caruthers argues that she "refused to establish that trial counsel could have used CPL 60.42(4) to rebut testimony provided by the D.A. that I was the source of semen, as the exception details[,] making [her] conduct fall below an objective standard of reasonableness". [1] at 16. In my reading, Caruthers' argument is that his *appellate* counsel was ineffective for failing to argue to the Appellate Division that his *trial* counsel was ineffective for failing to pursue a rape shield exception. Respondent interprets this contention differently, stating that "Petitioner's claim [is] that appellate counsel was ineffective for failing to brief a claim that the application of the rape shield law violated his confrontation rights". [13] at 46. In either event, Caruthers' claim is without merit.

-14-

The <u>Strickland</u> standard for ineffective assistance of counsel applies equally to trial and appellate counsel. <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994). In both regards, "decisions which fall squarely within the ambit of trial strategy . . . if reasonably made, will not constitute a basis for an ineffective assistance claim". <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987). A claim of ineffective assistance of counsel also cannot be based on "the failure to make a meritless argument". <u>United States v. Kirsh</u>, 54 F.3d 1062, 1071 (2d Cir. 1995). In fact, "counsel does not have a duty to advance every nonfrivolous argument that could be made". <u>Mayo</u>, 13 F.3d at 533.

New York's rape shield law, CPL §60.42, broadly bars "[e]vidence of a victim's sexual conduct" in a prosecution for a sexual offense, unless the defendant demonstrates one of five exceptions applies. This law has been repeatedly upheld as an example of the "broad latitude" afforded to state rulemakers "under the Constitution to establish rules excluding evidence from criminal trials . . . based on concerns about, among other things, harassment, prejudice, or confusion of the issues". <u>Garrison v. Lee</u>, 832 F. App'x 28, 30 (2d Cir. 2020) (*quoting* <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998); <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679 (1986)). While "exclusionary rules, like the rape shield law, diminish a defendant's 'ability to confront adverse witnesses and present a defense,'" they will be enforced "so long as their application is not 'arbitrary or disproportionate to the purposes they are designed to serve'". <u>Id.</u> (*quoting* <u>Michigan v. Lucas</u>, 500 U.S. 145, 149 (1991); <u>Rock v. Arkansas</u>, 483 U.S. 44, 56 (1987)).

During pretrial conferences, trial counsel indicated that he was aware of the rape shield statute, but that "based on my conversations with Mr. Caruthers and my review of the discovery and case law" he did not believe that any exception applied to prevent preclusion of

-15-

evidence of the victim's sexual contact with her boyfriend. [14-4] at 144-46, 157. Judge

Piampiano agreed. Id. at 158. Trial counsel did, however, seek to be able to cross-examine the

victim regarding her boyfriend's presence at the house being the reason that her mother was

upset. Id. at 159. On this point, Judge Piampiano disagreed and ruled that no questioning

regarding the boyfriend's presence at the home would be allowed. Id. at 161-62. Trial counsel

took exception to the ruling. Id. at 162.

This exchange, in itself, contravenes the claim that trial counsel's representation

fell below an objective standard of reasonableness. It demonstrates that counsel was aware of the

issue, considered it, researched it, and exercised his professional judgment in determining that no

exception could be pursued. The reasonableness of his actions is supported by the trial court's

agreement with his conclusion. Even having conceded the point, trial counsel continued to press

the court with respect to the scope of barred testimony, albeit unsuccessfully. This demonstrates

both that trial counsel acted strategically with respect to the rape shield issue, and that any

further action in that regard would have been fruitless.

In his CPL 440.10 motion, Caruthers argued that, *inter alia*, trial counsel was

ineffective for failing to challenge the prosecution's motion *in limine* to preclude evidence of the

victim's sexual history. [14-2] at 401-09. Judge Randall denied the motion on the grounds that

(1) the issue was a matter of record and was required to have been raised on direct appeal (hence

the claim that appellate counsel was ineffective); and (2) Caruthers failed to present facts or

evidence that trial counsel would have been successful in seeking such exception. Id. at 448.

Here, Caruthers again challenges trial counsel's decision not to contest the

prosecution's motion to preclude based on the rape shield law, arguing that CPL §60.42(4) could

have applied to rebut evidence that he was the "source of semen found in the victim". Id.; *see* [1]

at 16. While this argument was not specifically addressed by Judge Randall, the probative value of any such evidence is negligible where, as here, the uncontested DNA evidence presented at trial linked sperm samples from the victim with Caruthers. [14-4] at 1458-59.

For all these reasons, I conclude that the state court's decision on the issue of ineffective assistance of counsel was not unreasonable, and thus there is no basis for habeas relief.

## C.    Respondent's Other Arguments

Respondent raises other, potentially meritorious, arguments in opposition to the Petition. *See* [13] at 25-30, 31-32, 33, 35-38, 43-44. As my recommended dispositions would resolve all of Caruthers' claims on other grounds, I need not address them.

## CONCLUSION

For the above reasons, I recommend that the petition [1] for a writ of habeas corpus be denied, and because petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. §2253(c)(2), I further recommend that no certificate of appealability be issued.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by June 8, 2026. Any requests for extension of this deadline must be made to Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-

-18-

Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: May 20, 2026

/s/ Jerimiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge